IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MAZDA MOTORS OF AMERICA, INC.,       )
and INDEMNITY INSURANCE CO. OF       )
NORTH AMERICA,                       )
                                     )
            Plaintiffs,              )   Case No. CV07-62-HU
                                     )
    vs.                              )   FINDINGS AND
                                     )   RECOMMENDATION
M/V COUGAR ACE, her engines, tackle  )
and appurtenances, *in rem*,         )
                                     )
            Defendant.               )
_____)

Charles S. Jordan
Michelle Buhler
Danielson Harrigan Leyh & Tollefson
999 Third Avenue, Suite 4400
Seattle, Washington 98104
     Attorneys for plaintiffs

John D. Kimmerlein
Philip R. Lempriere
Keesal, Young & Logan
1301 Fifth Avenue, Suite 1515


1   - FINDINGS AND RECOMMENDATION

Seattle, Washington 98101
     Attorneys for defendant

HUBEL, Magistrate Judge:

This is an *in rem* admiralty action against the M/V COUGAR ACE by Mazda Motors of America, Inc. (Mazda America) and its subrogated cargo insurer, Indemnity Insurance Company of North America. Plaintiffs sue the COUGAR ACE for cargo damage to a shipment of Mazda automobiles.

The owner of the COUGAR ACE is MOB Cougar (Pte) Ltd. (MOB Cougar). MOB Cougar appears in this action solely to claim the COUGAR ACE, and moves to dismiss the complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, on the ground that the bills of lading contain a forum selection clause requiring that this action be brought in Japan.

## Factual Background

In July 2006, Mazda International Company, Ltd. consigned a cargo of 3,140 Mazda automobiles to Mazda America, its wholly owned subsidiary. The cargo was loaded aboard the COUGAR ACE in Japan, to be carried from Japan to Tacoma, Washington and Port Hueneme, California, under three bills of lading. The cargo carrier was Mitsui O.S.K. Lines, which apparently chartered the COUGAR ACE from MOB Cougar. The COUGAR ACE is named in the bills of lading.

///

2   - FINDINGS AND RECOMMENDATION

Paragraph 28 of the bills of lading contains the forum selection clause, which provides:

> 28. LAW AND JURISDICTION
>
> The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein. Unless otherwise agreed, any action against the Carrier thereunder must be brought exclusively before the Tokyo District Court in Japan.

Declaration of John Kimmerlein, Exhibit A, p. 10.

### Discussion

A.  <u>The forum selection clause</u>

The parties agree that the COUGAR ACE ratified the bills of lading by sailing with the cargo. "When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts of the vessel *in rem* upon the sailing of the vessel ... ." <u>Cactus Pipe & Supply Co. v. M/V MONTMARTRE</u>, 756 F.2d 1103, 1113 (5th Cir. 1985). See also <u>Union Steel America Co. v. M/V SANKO SPRUCE</u>, 1999 AMC 372, 375 n. 2 (D. Or. 1998)(quoting <u>THE MONTMARTRE</u>).

If a vessel is subject to liability under the relevant bills of lading based on such constructive ratification, "it should also benefit from any protective provisions of such bills such as the forum selection clause." <u>THE SANKO SPRUCE</u>, 1999 AMC at n. 2. Furthermore, under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300-1315, the responsibilities and

3   - FINDINGS AND RECOMMENDATION

liabilities of the vessel are the same as those of the carrier. 46 U.S.C. § 1303. Paragraph 32 of the bills of lading incorporates COGSA:

> 32. US CLAUSE PARAMOUNT
>
> (1) If the Carriage covered by this Bill of Lading includes Carriage to or from a port or place in the United States of America, this Bill of Lading shall be subject to the United States Carriage of Goods by Sea Act 1936 (US COGSA), the terms of which are incorporated herein and shall govern throughout the entire time during which the Goods are in the actual custody of the Carrier.

Kimmerlein Declaration, Exhibit A, p. 10.

Nevertheless, plaintiffs assert that the language of the forum selection clause does not apply to *in rem* claims asserted against the COUGAR ACE, because the scope of the forum selection clause in the bills of lading is limited to any action "against the Carrier," and the bills of lading define "Carrier" as "Mitsui O.S.K. Lines, Ltd." Plaintiffs argue that because the forum selection clause does not identify the COUGAR ACE, the clause is not applicable to this *in rem* action.

Plaintiffs rely on a line of cases beginning with the Supreme Court's decision in THE MONROSA v. Carbon Black Export, Inc., 359 U.S. 180 (1959), and holding that *in rem* actions are not governed by forum selection clauses that do not explicitly name the vessel. In THE MONROSA, the vessel moved to dismiss based on a forum selection clause in a bill of lading that

4   - FINDINGS AND RECOMMENDATION

provided:

> [N]o legal proceedings may be brought against <u>the Captain or Shipowners or their Agents</u> in respect to any loss or damage to any goods herein specified except in Genoa, it being understood and agreed that every other Tribunal in the place or places where the goods were shipped or landed is incompetent, notwithstanding that the ship may be legally represented there.

359 U.S. at 182 (emphasis added). The Court concluded that the forum selection clause did not apply to a suit *in rem*.

> [T]his clause should not be read as limiting the maintenance of an action *in rem* against the vessel to enforce a maritime lien for proper carriage. The initial words are particularly appropriate to a restriction of the clause to *in personam* actions, and the rest of the language is intelligible on this premise. ... [W]e will not stretch the language when the party drafting such a form contract has not included a provision it easily might have....

<u>Id.</u> at 182-83. See also <u>Loomis v. SS SANTA ROSA</u>, 447 F.2d 105 (9th Cir. 1971)(limitation clause "did not expressly apply to proceedings *in rem* against the vessel").

In contrast, other cases hold that broader forum selection clauses applicable to "any dispute" or "any claim or dispute" arising under the bills of lading, not explicitly limited to the carrier, are applicable to actions *in rem*. <u>THE BREMEN v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972); <u>Sembawang Shipyard Ltd. v. M/V CHARGER</u>, 955 F.2d 983 (5th Cir. 1992); <u>Reed & Barton Corp. v. M/V TOKIO EXPRESS</u>, 1999 AMC 1088 (S.D.N.Y. 1999); <u>Holmes v. Westport Shipyards, Inc.</u>, 2004 AMC 1640 (S.D. Fla. 2004); see also <u>Packers</u>

5   - FINDINGS AND RECOMMENDATION

v. Dole, 2006 AMC 370, 372 (M.D. Fla. 2005)("any suit against the Carrier, his agents, or the vessel").

MOB Cougar counters that plaintiffs' reliance on THE MONROSA is misplaced because THE MONROSA reflects judicial hostility to forum selection clauses on public policy grounds; this trend was reversed by the time of the Supreme Court's decision in THE BREMEN, where the Supreme Court held that public policy favored the enforcement of forum selection clauses in admiralty cases. See also Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528 (1995)("historical judicial resistance to foreign forum selection clauses has little place in an era when ... businesses once essentially local now operate in world markets.")(quoting THE BREMEN, 407 U.S. 1, 32 (1972).

MOB Cougar asserts further that THE MONROSA is distinguishable because the pertinent clause of the bill of lading expressly consented to *in rem* jurisdiction:

> ... it being understood and agreed that every other Tribunal in the place or places where the goods were shipped or landed is incompetent, notwithstanding that the ship may be legally represented there.

(Emphasis added). Such consenting language does not appear in the bills of lading at issue here.

Plaintiffs counter that because the bills of lading are contracts of adhesion drafted by the carrier, they should be strictly construed against the carrier. See All Pacific Trading

6   - FINDINGS AND RECOMMENDATION

Inc. v. M/V HANJIN YOSU, 7 F.3d 1427, 1431 (9th Cir. 1993)("Bills of lading are contracts of adhesion, usually drafted by the carrier, and are therefore "strictly construed against the carrier."); Institute of London Underwriters v. Sea-Land Service, Inc., 881 F.2d 761, 767 (9th Cir. 1989)(any ambiguity in bill of lading must be construed in favor of the shipper and against the carrier). But this rule has recently been rejected by the Supreme Court, which has held that contracts for the carriage of goods are to be construed like other contracts, by their terms and consistent with the intent of the parties, without any particular requirement of strict construction. Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 31 (2004).

I am unpersuaded by the plaintiffs' argument that the COUGAR ACE cannot invoke the protection of the forum selection clause because that clause names only the "Carrier," for two reasons. First, the COUGAR ACE is a party to the bills of lading by virtue of ratification, and is therefore entitled to the benefit of their protective provisions, such as the forum selection clause. THE SANKO SPRUCE, 1999 AMC at n. 2. Second, the bills of lading incorporate the terms of COGSA, which imposes the same liabilities (and necessarily the same defenses) on the vessel as on the carrier. Absent a rule of strict construction, which no longer exists, I can find no logical explanation for not including the COUGAR ACE, the performing carrier, within the

7  - FINDINGS AND RECOMMENDATION

scope of the forum selection clause.

   B.   The Himalaya clause

MOB Cougar asserts in its reply that Paragraph 4(2) of the bills of lading also precludes plaintiffs from bringing an *in rem* action against the COUGAR ACE. Paragraph 4(2) provides:

> The Merchant undertakes that no claim or allegation shall be made against any servant, agent or Sub-Contractor of the Carrier which imposes or attempts to impose upon any of them, or upon any vessel owned or operated by any of them, any liability whatsoever in connection with the Goods and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and Sub-Contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit; and in entering into this contract, the Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents, and Sub-Contractors.

Kimmerlein Affidavit, p. 2. This provision, called a Himalaya clause, is a "clause commonly used to extend a carrier's defenses and liability limitations to certain third parties performing services on its behalf." Mori Seiki USA v. M/V ALLIGATOR TRIUMPH, 990 F.2d 444, 450 (9th Cir. 1993); 2 T. Schoenbaum, *Admiralty and Maritime Law* (3d ed. 2001) § 10-11(purpose of a Himalaya clause is to extend to third parties the defenses and limitation of liability of COGSA, which by its terms applies to the carrier and the vessel.)

Despite the parties' agreement that the COUGAR ACE is bound

8  - FINDINGS AND RECOMMENDATION

by the bills of lading, and therefore subject to both the liabilities and the defenses contained in the bills of lading, both sides have briefed the issue of whether the third party protections provided by the Himalaya clause should be construed to apply to the COUGAR ACE.

I am not persuaded that, as a party to the bills of lading, the COUGAR ACE need have the status of a third party beneficiary under the Himalaya clause to invoke the protection of the forum selection clause. Conceptually, it is difficult to conceive of the COUGAR ACE as both a party to the bills of lading (as the parties agree) and a third party beneficiary of them. But because MOB Cougar has made this argument, I will consider it.

MOB Cougar argues that the first sentence of the Himalaya clause requires plaintiffs to bring their claims only against the Carrier, and prohibits them from suing other parties, including the COUGAR ACE, for cargo damage. It argues that the second sentence provides that if a claimant disregards the first sentence, the COUGAR ACE's owner, which fits within the definition of "Sub-Contractor," will be entitled to the rights and defenses of the carrier, including the forum selection clause, in defending itself or its vessel from the Merchant's claims.

Paragraph 1 of the bills of lading defines Subcontractors to include "owners and operators of Vessels and ... any

9 - FINDINGS AND RECOMMENDATION

independent contractor directly or indirectly employed by the Carrier in performance of the Carriage ... and anyone assisting the performance of the Carriage." MOB Cougar argues that this definition encompasses both itself, as the owner of the COUGAR ACE, and the COUGAR ACE, because the COUGAR ACE was employed by the carrier in performance of the cargo carriage. MOB Cougar argues that under the Himalaya clause, subcontractors used in the carriage of goods are entitled to the same benefits under the bills of lading as the carrier.

The plaintiffs respond that 1) the COUGAR ACE is not a Himalaya clause beneficiary, because a Himalaya clause governs the rights of a third party and has no application to the COUGAR ACE, which is a party to the bill of lading in her own right by virtue of ratification; and 2) the language of the Himalaya clause, both standing alone and in context, shows that it is not intended to apply to the COUGAR ACE.

     1.    <u>Is the COUGAR ACE a third party beneficiary of the Himalaya clause?</u>

Plaintiffs begin with the mistaken contention that Himalaya clauses are to be strictly construed and limited to intended beneficiaries. Consequently, they argue, when a party seeking protection under a Himalaya clause is not specifically mentioned in the clause, the party should, at a minimum, be included in a well-defined class of readily identifiable persons to which the

10 - FINDINGS AND RECOMMENDATION

benefits are extended. Id. Plaintiffs argue that these intended beneficiaries are such third parties as stevedores, terminal operators, shipyards, vessel managing agents, and inland carriers, but not vessels that are themselves parties to the bill of lading.

As discussed above, the notion that contracts of carriage in general, and Himalaya clauses in particular, are to be strictly construed has been rejected by the Supreme Court. Norfolk Southern Railway, 543 U.S. at 31. Plaintiffs' argument that the Himalaya clause must be strictly construed to exclude the COUGAR ACE as a third party beneficiary of the Himalaya clause is unavailing.

> 2. Does the language of the bill of lading designate the COUGAR ACE as a Himalaya clause beneficiary?

The first sentence of the Himalaya clause states: "The Merchant undertakes that no claim or allegation shall be made against any servant, agent or Sub-Contractor of the Carrier which imposes or attempts to impose upon any of them, or upon any vessel owned or operated by any of them,[1] any liability whatsoever in connection with the Goods..." (Emphasis added). Plaintiffs argue that the term "vessel" is not an object in this sentence

---

[1] Subcontractors are defined in the bills of lading to include "owners and operators of Vessels and ... any independent contractor directly or indirectly employed by the Carrier in performance of the Carriage ... and anyone assisting the performance of the Carriage."

11 - FINDINGS AND RECOMMENDATION

that is to be construed with "servant," "agent," or "Sub-Contractor," but rather is used merely to describe the type of claim (*in rem*) the Merchant will not make.

This argument is unpersuasive because interpreting the word "vessel" to refer to an *in rem* claim still supports an interpretation that the "Merchant" (*i.e.,* plaintiffs) agrees not to assert any claim against a servant, agent or sub-contractor which attempts to impose upon any of them "any liability ... in connection with the goods," whether the claim is *in personam* against the servant, agent or sub-contractor or *in rem* against "any vessel owned or operated by ... them." Accordingly, I interpret this clause to mean that plaintiffs are precluded from asserting an *in rem* claim against any vessel owned or operated by a servant, agent or sub-contractor as those terms are defined in the bill of lading. The COUGAR ACE falls within those terms.

Plaintiffs contend that the second sentence of the Himalaya clause eliminates any doubt that the term "vessel" is not being used to identify an intended Himalaya beneficiary, as it confers the benefits of the bill of lading exclusively upon servants, agents, and Sub-Contractors, but not the "vessel": "Without prejudice to the foregoing, every such servant, agent and Sub-Contractor shall have the benefit of all provisions herein benefitting the Carrier..." (Emphasis added).

In Norfolk Southern Railway, the Court held that such

12 - FINDINGS AND RECOMMENDATION

"linguistic specificity" is not required to invoke a Himalaya clause. 543 U.S. at 31. In this case, as in <u>Norfolk Southern Railway</u>, the broad language of the Himalaya clause ("no claim or allegation shall be made against <u>any</u> servant, agent or Sub-Contractor of the Carrier which imposes or attempts to impose <u>upon any of them, or upon any vessel owned or operated by any of them, any liability whatsoever</u>") indicates an intent to extend the defenses of the contract broadly to any entity whose "services contribute to performing the contract." <u>Id.</u> (noting expansive meaning of the word "any"). The services provided by MOB Cougar and the COUGAR ACE are services that are within the carrier's contractual duties. <u>Id.</u>

> 3. <u>Do the bills of lading expressly contemplate that *in rem* claims may be filed against the COUGAR ACE?</u>

Plaintiffs argue that because provisions of the bills of lading other than the Himalaya clause expressly acknowledge that *in rem* claims may be filed against the "vessel," this is conclusive evidence that the COUGAR ACE is not a Himalaya clause beneficiary. Plaintiffs direct the court to paragraph 32, the provision incorporating COGSA for carriage to or from a port of the United States. Subsection (2) of paragraph 32, the limitation of liability provision, states:

> (2) If US COGSA applies as (1) above, neither the

13 - FINDINGS AND RECOMMENDATION

> Carrier, <u>nor the Vessel</u> shall, in any event, be or become liable for any loss or damage to or in connection with the Goods in an amount exceeding $500 per package, lawful money of the United States, or in case the Goods are not shipped in packages, per customary freight unit unless the value of the Goods has been declared and inserted in the declared value box on the face hereof, in which case Clause 5(5) shall apply.

(Emphasis added). Plaintiffs argue that clause 5(7) also recognizes that claims may be made against the vessel:

> ... In any event the Carrier <u>and the Vessel</u> shall be discharged from all liability in any capacity whatsoever for any loss or damage to the Goods, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

(Emphasis added).

Plaintiffs argue from these provisions that express language used in the bills of lading anticipates that claims may be asserted against the COUGAR ACE, by incorporating COGSA when the carriage is to or from United States ports. They point out that under COGSA, the COUGAR ACE, as well as the carrier, is potentially liable for cargo loss occurring during transit. See, e.g., COGSA §§ 1304(1),(2),(3),(5)(rights and immunities of carrier and ship).

The plaintiffs' argument that the bills of lading incorporate COGSA, and that COGSA contains provisions that contemplate *in rem* cargo claims in admiralty, begs the question. Himalaya clauses are typically accompanied by an incorporation by

14 - FINDINGS AND RECOMMENDATION

reference to COGSA. See *Admiralty and Maritime Law* § 10-8: "It is settled law that the Himalaya clause is valid if COGSA is incorporated by reference ... into the bill of lading. ... However, the benefit of a Himalaya clause will not be extended to a cargo handler after the delivery to the consignee when COGSA is no longer applicable. ..." Id.

  The fact that COGSA applies to both carrier and ship, and that a ship may be liable for cargo claims as well as the carrier, does little to support the plaintiffs' argument that the forum selection clause should be applied to the carrier, but not to the ship.

## Conclusion

  The COUGAR ACE ratified the bills of lading by sailing with the cargo. Because the COUGAR ACE's status under the bills of lading is essentially that of the carrier, the COUGAR ACE is entitled to invoke the defenses, as well as the liabilities, of the contract of carriage. On that basis, the COUGAR ACE is entitled to invoke the protection of the forum selection clause.

  MOB Cougar's alternative argument, that the COUGAR ACE is the third-party beneficiary of the Himalaya clause and entitled to the protection of the forum selection clause for that reason, is logically more convoluted, but leads to the same result. Under Norfok Southern Railway, Himalaya clauses are to be construed so as to give effect to the contract language and the intent of the

15 - FINDINGS AND RECOMMENDATION

parties. The Himalaya clause in this case is broadly written and indicates an intent to extend its terms broadly, to any entity whose services contribute to performing the contract of carriage. The COUGAR ACE satisfies that requirement.

I recommend that this action be dismissed on the basis of the forum selection clause.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 19, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due August 2, 2007, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 5th day of July, 2007.

/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge